B. & O. R. R. Co. v. Stanley.

Baltimore & Ohio Railroad Company v. William M. Stanley, Administrator of the Estate of Robert Waade, Deceased.

1. NEGLIGENCE—*Controverted Questions of Fact.*—In actions for personal injuries, controverted facts, such as whether the deceased was struck while on the highway crossing, or while trespassing on the right of way, are questions for the jury.

2. RAILROAD COMPANIES—*Street Crossings—Gross Negligence.*—At a place in the suburbs of a populous city (Chicago), where a public street is crossed at a grade by six railroad tracks, used by three great railway systems, it is gross and wanton negligence to operate a railroad without any guard or protection to a traveler whose pleasure or duty might require him to go over the crossing in the night time.

3. DAMAGES—*$5,000 Not Excessive.*—A person was struck by an engine and killed upon a railroad crossing; he left a widow and two children, aged nine and twelve years respectively. He was a laboring man and earned $1.50 a day. *It was held* that $5,000 was not excessive.

4. SAME—*Elements of Damages—Death from Negligent Act.*—In an action to recover damages resulting from death by negligent acts, the value of the services of the deceased in the superintendence, attention to and care of his family and the education of his children, are proper elements of damages.

Memorandum.—Action for damages. Death by negligent acts. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the March term, 1894, and affirmed. Opinion filed April 19, 1894.

The opinion states the case.

APPELLANT'S BRIEF, E. R. JEWETT, ATTORNEY.

It is the duty of a person about to cross a railroad track to look and listen for approaching trains, and the neglect of that duty is such gross negligence as precludes all right of recovery in case of collision. C. & R. I. R. R. Co. v. Still, 19 Ill. 499; G. & C. U. R. R. Co. v. Dill, 22 Ill. 265; C. & A. R. R. Co. v. Gretzner, 46 Ill. 83; T. P. & W. Ry. Co. v. Riley, 47 Ill. 515; St. L., A. & T. H. Ry. Co. v. Manly, 58 Ill. 300; C. & A. R. R. Co. v. Jacobs, 63 Ill. 179; C. B. & Q. R. R. Co. v. Lee, 68 Ill. 576; T., W. & W. Ry. Co. v.

Jones, 76 Ill. 312; C. R. I. & P. R. R. Co. v. Bell, 70 Ill. 102; C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 516; C., B. & Q. R. R. Co. v. Damerell, 81 Ill. 455; W., St. L. & P. Ry. Co. v. Hicks, 13 Brad. 407.

### APPELLEE'S BRIEF, JESSE COX, ATTORNEY.

Railroad companies, in operating their cars in crossing public highways, must so regulate the speed of their trains, and give such signals to persons passing, that all may be apprised of the danger of crossing the railroad track; and a failure of any of these duties on their part, will render them liable for injuries inflicted and for wrongs resulting from such omissions. R. R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235; C. & R. I. R. R. Co. v. Still, 19 Ill. 508.

Where railroad companies cover a public street with a large number of tracks, they must observe unusual care and take extra precautions to avoid injury to persons passing along the street or sidewalk. L. S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 649.

The omission of a person approaching a railway crossing to look and listen for a coming train does not necessarily, and as a matter of law, constitute negligence. T., St. L. & C. R. R. Co. v. Kline, 135 Ill. 49; T. H. & I. R. R. Co. v. Voelker, 129 Ill. 540; Penna. Co. v. Kean, 41 Ill. App. 317; C. & E. I. R. R. Co. v. Tilton, 26 Ill. App. 362.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This action was brought for the killing of one Robert Waade, on February 20, 1888.

The theory of the declaration, and that only upon which the appellee sought to recover, was, that the deceased was struck and killed by a locomotive engine belonging to, and operated by the appellant, while the deceased was attempting to cross the appellant's railroad tracks at their crossing of 67th street, a public highway then in Hyde Park, but now in Chicago.

No question is made but that 67th street is, and was at the

time the injury was done, a public highway, nor but that Waade was killed in some manner, at or near the crossing of such highway by the appellant's tracks at the time charged.

The railroad right of way at the crossing of 67th street runs in nearly a due north and south course, and was occupied by six tracks, numbered from the west, for convenience of designation, from one to six, which were used by the Illinois Central, Michigan Central and Baltimore & Ohio Railroad companies. Tracks one and two were used exclusively by the Illinois Central Company for its suburban passenger business; tracks three and four for the through passenger trains of the three companies, and tracks five and six for the through freight traffic of the three companies.

At a point between seven and eight hundred feet south of 67th street crossing, a branch of the Illinois Central road switches off to the eastward, and about seven hundred feet further on, the Baltimore & Ohio junction with its main line going eastward, is made.

All passenger trains of the Baltimore & Ohio Company going to the east, must therefore switch off from track three or four and cross over tracks five and six, in order to get upon its own main line, which from that point begins to take an easterly course.

The home of the deceased, Waade, was on a street lying south of 67th street and east of the railroad. It was testified that he had been on an errand to a point north of 67th street and west of the railroad, and that he was struck by the locomotive when going eastwardly across the railroad on 67th street on his way home. It was between ten and eleven o'clock at night.

On the part of the defendant there was evidence to show that the deceased was not on the 67th street crossing when he was struck, but was going southwardly on the railroad right-of-way, south of the crossing of 67th street, and it is certain that the body of the deceased was found on the tracks near a switchman's shanty, some seven or eight hundred feet south of 67th street.

The testimony of three witnesses, one of whom was Waade's companion on the errand upon which he had been engaged and was walking homeward with him, and was but two or three steps behind him when crossing the tracks at the moment of the approach and passing of the locomotive which is claimed to have struck him, and the other two of whom were in the wagon which was waiting at the crossing for the train to pass, and who recognized the deceased and his companion as they walked past the wagon and entered upon the tracks, if true, makes it altogether improbable, if not impossible, that Waade could have walked down the tracks to the point where his body was found in time to have been struck there by any train which passed between the time when he entered upon the tracks and when his body was found, and makes it reasonably certain that his body was carried by the locomotive which, without contradiction, did cross 67th street, very soon after he entered upon the tracks.

The testimony of the switchman, McCarthy, and the fact of the body being found near the switch house, and the shape of the locomotive end, is all that tends to rebut the evidence for the plaintiff tending to show that the deceased was within the limits of 67th street when struck by the locomotive.

The weight of McCarthy's testimony was a matter for the jury to pass upon, and that they did not permit it to control them in their conclusion that Waade was struck while on the crossing of the highway we think was justifiable.

His identification of the two men he met a few minutes before Waade was hurt, as Waade and his companion, Mann, was far from positive or convincing. He expressly testified that he did not recognize the men he met and spoke to, at the time of meeting them, and that it was not until after the accident had happened that he identified the injured man and Mann, as the same persons he had met a few minutes earlier.

The jury might well have concluded that he was mis-

taken, and especially so, when, if he was correct as to the time when he met the men with whom he spoke, they would, if continuing on their course, as he said they did, have reached a point far beyond the place where Waade's body was found, before the accident occurred.

There was testimony that tended to show that because of the peculiar construction or form of the front end of the Baltimore & Ohio locomotive that passed there going south at the time of the accident, the body of a person struck by it could not have been carried so far as from 67th street to the switch house, without falling off. There is very little room for argument upon a proposition involving what may or may not have happened to the body of a man struck by the front end of a rapidly moving locomotive, between the place where it was run against and the spot where it was subsequently found.

" The unexpected always happens," is a common proverb, and " the things which are impossible with men are possible with God," is an utterance of one possessed of greater than human wisdom; and the jury may well have dismissed that proposition from their consideration in reliance upon the authority of either of those sayings, if they found that Waade was run against, at the crossing, by a locomotive moving at the rate of twenty miles an hour.

It is strongly insisted that the evidence failed to establish that, assuming the accident to have happened at the street crossing, it was caused by the appellant's locomotive.

The accident occurred in the night-time, and the identification of the train which passed at the time the injury happened, depended to a considerable extent upon the sense of sight of the witnesses of the appellee who were present or near by.

There were two freight trains standing on the tracks numbered five and six, one bound north, on track five, and the other bound south, on track six. These two trains seem to have been waiting for the setting of certain switches and for the passing of an Illinois Central suburban train, and of a Baltimore & Ohio through passenger train. The switch-

man, McCarthy, testified, in behalf of the appellant, that the two passenger trains were due at 67th street at nearly the same time, the suburban train at thirty-seven minutes past ten o'clock, and the Baltimore & Ohio at forty-nine minutes past ten. He further testified that after the Illinois Central suburban train had passed he set the switches on the sixth track for the Baltimore & Ohio train to pass, and after that train had passed he then set up the switches on the fourth and fifth tracks for the freight train that was coming from the south, and then went up again to the sixth track, and set the switch for the freight train that was coming from the north.

It was then that he heard the man groaning by the switchman's shanty and stopped the freight trains. He also testified that the route of the Baltimore & Ohio train was by a switch from the fourth to the sixth track, and that when opposite his shanty, where the body was found, the train was on the sixth track, and that the body was found there not more than three or four minutes after that train passed. He also testified that no other train passed there between the time of the passing of the Illinois Central suburban, and that of the Baltimore & Ohio.

It seems from McCarthy's testimony alone, pretty certain that if Waade was killed by any train, it must have been by that of the Baltimore & Ohio.

Adding to his testimony that of the witnesses for appellee, who identified the train that crossed 67th street at the moment when, according to their testimony, Waade disappeared, as the Baltimore & Ohio train, and we can not avoid the conclusion that he was killed by appellant's locomotive.

It is urged that such a want of care and caution by the deceased is shown as precludes a recovery.

The controverted fact of whether the deceased was struck while on the highway crossing, or while trespassing on the appellant's right of way, was settled by the verdict of the jury, adversely to the appellant, and the conduct of the appellant and of the deceased at that place, at the time of

the accident, will determine whether there was such a lack of care and caution exercised as to bar appellee from a right of recovery.

Here was a public highway crossed at grade by six railroad tracks occupied and used by three great railway systems.

The particular point was in the suburbs of a populous city. In addition to the ordinary through passenger and freight traffic carried on by each of the railways, one of them conducted a suburban passenger traffic requiring frequent trains. The evidence discloses that no gates or flagman guarded the crossing. Four trains, two for freight and two for passengers, approached the crossing at nearly the same time, moving in different directions, or were standing waiting for the setting of switches over which to proceed.

Under such circumstances the deceased was bound to exercise such care and caution as a reasonable and ordinarily prudent person would exercise, and no more; that the team and wagon driven by the witness, Corcoran, should have halted and waited for the trains to pass before crossing the tracks, affords no such guide to the situation as to have made it imperative upon Waade and his companion to have waited an equal length of time before attempting to cross, or be charged with undue negligence. A man on foot may, under such circumstances, go with comparative safety into many places and move forward many times, when it would be unsafe for a team and wagon to be driven. Julius Mann, who was in company with the deceased, testified that as they went upon the tracks he observed a freight train coming from the south at such a distance as they could easily pass before it; that he looked and could see nothing coming from the north; that Waade was about three steps ahead of him; that suddenly, and after they had gone three or four steps, a train came down "as quick as lightning" from the north; that as soon as the train had passed he looked around for Waade but he had disappeared; that the train "came on the middle track," and that he heard no whistle and heard no bell.

Corcoran, the teamster, and Herman Mann, who was riding with him, both testified that they heard no whistle or bell, and that the train was moving at from fifteen to twenty miles an hour.

There was evidence on appellant's behalf that the bell on the locomotive drawing appellant's train, which passed 67th street at the hour the accident is claimed to have occurred, was rung as it approached and passed over the crossing, and there was evidence that the train was not running at over four or five miles an hour, and if it were our province to determine questions of fact it might be a question of some difficulty as to which set of witnesses was telling the truth, especially as to the speed of the train; but such questions are for the jury, and, except for much weightier reasons than we are able to gather, it is not for us to say the jury was wrong.

There seems to be no doubt but that there were no gates to guard the crossing, and no flagman to warn passers, and at such a crossing as this one was shown to be, it would be a somewhat violent conclusion for either a jury or a court to say that it was not gross and wanton negligence on the part of the railroad company to operate its road without any guard or protection to a traveler whose pleasure or duty might require him to go over the crossing in the night-time.

But whether that be so or not, it does, we think, appear sufficiently to sustain the jury's finding, that the deceased was in the exercise of such reasonable care for himself as an ordinarily prudent man would exert under like conditions. That Julius Mann was not also struck at the same time, was not due to the exercise by him of any greater prudence than exercised by Waade, for although he saw the freight train that was approaching from the south, he did not see or hear the appellant's passenger train that came upon them from the north until at the instant that Waade was, as is claimed, hit, but his safety and escape lay in the mere fact that he was about three steps behind Waade.

Much fault is found with the exclusion by the court of a

part of the instructions asked by the appellant and the substitution therefor of one given by the court of its own motion, but we fail to discover any reasonable justification for complaint in that regard.    The substituted instruction included everything that was material and competent in the appellant's refused instructions, and in our view presented the whole of the law of the case to the jury, in a manner concise, easily understood, and worthy of imitation.

All the given instructions were as follows:

The court of its own motion gave to the jury the following instruction:

1. In this case the jury may properly, first, from the evidence, determine whether or not the deceased was struck and killed by an engine of the defendant company, for unless from the evidence you believe that he was struck and killed by an engine of the defendant company, you must find the defendant not guilty.    But it does not follow that if you believe from the evidence that deceased was struck and killed by an engine of the defendant company that you should find the defendant guilty, but in that case, that is, if you, from the evidence, believe that the engine of the defendant company struck and killed the deceased, it will be your duty to consider and from the evidence determine the other questions in the case, and in that case, first, to determine from the evidence where the deceased was when he was struck.    The plaintiff alleges that the deceased was struck at 67th street, while he was passing along 67th street over and across the railroad tracks, and this is denied by the defendant company.    Unless from the evidence you believe that deceased was struck by the engine of defendant while deceased was passing along 67th street over and across the railroad tracks, you must find the defendant not guilty; or in other words, if, from the evidence, you believe that the deceased was struck and killed by an engine of the defendant, and further believe from the evidence that deceased, when he was struck by such engine, was not passing along 67th street, but was on the railroad track several hundred feet from 67th street, then you must find that the evidence

does not support the allegation of plaintiff that deceased was struck while passing along 67th street, and that unless you find that that allegation has been proved you must find the defendant not guilty. But it does not follow, gentlemen of the jury, that if you find first, that deceased was struck and killed by an engine of defendant, and that he was struck by such engine while passing along 67th street, that you should find the defendant guilty. But in that case, it will be your duty to consider the other questions in the case, and for your guidance and instruction upon that branch of the case, the court gives the following instructions:

Thereupon the court gave to the jury, on behalf of the plaintiff, the following instructions, to wit:

If the jury believe, from the evidence, that in the month of February, 1888, Robert Waade attempted to cross the track used by the defendant to run its cars upon, at and over a certain highway or street known as 67th street, in Cook county, Illinois, and that while the said Robert Waade was crossing or attempting to cross over the defendant's track at said place he was struck and killed by a locomotive engine operated by the defendant, and if the jury believe from the evidence that the said injury to the said Robert Waade was caused by the negligence of the servants or employes of the defendant in charge of the said locomotive engine, and if the jury further believe from the evidence that the said Robert Waade, at the time of and just prior to his receiving said injury, was exercising due and proper care and was using due and reasonable care and means to foresee and prevent said injury, and if the jury further find from the evidence that the plaintiff in this case is the personal representative of the said Robert Waade, and that said Robert Waade, at the time of his death, left a widow and children, and the said widow and children have sustained pecuniary damage by reason of the death of the said Robert Waade, then the jury should find the defendant guilty.

The jury are instructed that reasonable care and caution required of the deceased, as mentioned in these instructions, means that degree of care and caution which might reasonably be expected from an ordinarily prudent person under

the circumstances which they shall find from the evidence surrounded the deceased at the time of the alleged injury.

Whereupon the court of its own motion then gave to the jury the following instruction, to wit:

It follows from what has been said that in order to find a verdict of guilty in this case, you must, from the evidence, believe, first, that deceased was struck and killed by an engine of the defendant company; second, that he was so struck and killed at the crossing of 67th street and the railroad tracks; third, that at and just before the time he was so struck, deceased was exercising reasonable care and caution for his own safety; fourth, that the defendant company was guilty of negligence in the management of its trains and engines as charged in the declaration, and that such negligence was the cause of, or contributed to the injury of the deceased; and unless you find all of said facts in favor of the plaintiff you must find the defendant not guilty; and if you, from the evidence, find all of said facts in favor of the plaintiff and against the defendant, then you must find the defendant guilty; then it will be your duty to assess plaintiff's damages, and upon that branch of the case the court gives you the following instructions:

The court then instructed the jury on behalf of the plaintiff, as follows:

The jury are instructed that if they find the defendant guilty from the evidence, and under the instructions of the court, then, in assessing the plaintiff's damages, they may properly take into consideration the pecuniary loss and damage, if any, which they shall find from the evidence that the widow and children of said Robert Waade have sustained by reason of the death of the said Robert Waade.

And the court, of its own motion, then gave to the jury the following instruction, to wit:

All questions of fact are for you, gentlemen of the jury, and upon no question of fact has the court the right to give you any instruction, and no instruction given is to be regarded as any expression or intimation of any opinion on the part of the court upon any question of fact.

And thereupon the court gave to the jury, on behalf of the defendant, the following instructions, to wit:

If the jury believe from the evidence that the deceased went upon the track at the 67th street crossing, knowing that the said crossing was at the time occupied by a train of the defendant, and also by other trains, then the jury are instructed that it was such an act of negligence on the part of the deceased as will bar a right to recover.

The jury are instructed that at a railroad crossing an engine and train have the prior right of passage, and that if deceased knew or could have known by the exercise of ordinary prudence, that a train was crossing, or about to cross, he was guilty of negligence in going upon said crossing, and under the pleadings and proof in this case can not recover.

It is assigned as error that the damages awarded are excessive.

The verdict and judgment are for $5,000. The deceased left a widow and two children, aged nine and twelve years, respectively. He was a laboring man and earned $1.50 a day.

What the exact measure of compensation is under such conditions has never been fixed, and probably never can be. The legislature has wisely fixed a limit beyond which juries may not go, but within that limit the discretion of the jury can seldom be declared to be so disproportioned to the actual pecuniary loss to the surviving widow and children as to warrant a reversal on that ground.

It would require the whole amount of the judgment to be invested at a higher rate of interest than is lawful by the laws of this State, to produce an income equal to the annual earnings of the deceased if regularly employed on the secular days of the year.

Moreover, there are other elements than the mere probable earnings or wages of a man, that are entitled to be considered in arriving at the full pecuniary compensation.

In a case where the appellant here was likewise the appellant, Baltimore & Ohio R. R. Co. v. Wightman, 29 Grattan,

431, it was held, there might be added to the probable earnings of the deceased during what would probably have been the remainder of his lifetime, the value of his services in the superintendence, attention to, and care of his family and the education of his children, of which they have been deprived by his death, and what was said in Tilley v. Hudson River R. R. Co., 29 New York, 252, was there quoted with approval:

"All these are elements of pecuniary success, component parts of that pecuniary capital, of the continued exercise and employment of which the children were entitled to the benefits, and of which the wrongful act of the defendants deprived them."

In no view of the case that has been suggested to us are we able to find any material error in the record, and the judgment of the Circuit Court will therefore be affirmed.